IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| LOUISIANA-PACIFIC CORPORATION, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:18-cv-00447 |
| ) | |
| JAMES HARDIE BUILDING ) | DISTRICT JUDGE JON P. McCALLA |
| PRODUCTS, INC., ) | |
| ) | JURY DEMAND |
|     Defendant. ) | |
| ) | |

**RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST TO STRIKE, EXCLUDE, AND EXPUNGE IMPROPER MATERIALS FILED IN VIOLATION OF FED. R. EVID. 408**

For its response in opposition to Plaintiff's Motion for Temporary Restraining Order ("TRO Motion")[1] and Request to Strike, Exclude, and Expunge Improper Materials Filed in Violation of Fed. R. Evid. 408, Defendant states as follows:

## LAW AND ARGUMENT

A temporary restraining order is a drastic and extraordinary remedy that should be granted only if the movant establishes that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). In order to prevail, a movant must demonstrate: (1) a <u>strong</u> likelihood of success on the merits; (2) that it will suffer irreparable injury without the injunction; (3) that the balance of equities tips in its favor; and (4) and that the public interest would be served by the issuance of the injunction. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). An injunction is "an extraordinary and drastic remedy" which should be granted with "great caution." *Int'l Sec. Mgmt. Grp., Inc. v. Sawyer*,

---

[1] Plaintiff's Memorandum in support of the TRO Motion [18] shall be cited herein as "TRO Memo. at _."

No. 3:06cv0456, 2006 U.S. Dist. LEXIS 37059, at *19 (M.D. Tenn. June 6, 2006). Plaintiff, as the moving party, has the burden of proving that the circumstances "clearly demand" a preliminary injunction. *Beasley v. Westbrooks*, No. 3:16-3010, 2017 U.S. Dist. LEXIS 152103, at *4 (M.D. Tenn. Sep. 19, 2017).

Such circumstances are not present here for at least three primary reasons. In brief, the motion must be denied because:

(1) The three statements forming the basis of Plaintiff's motion– as demonstrated by Plaintiff's own documents used in the normal course and not created for this litigation, and photographs of the actual damage depicted – are neither false nor misleading;

(2) Plaintiff has delayed in seeking emergency relief, as the allegedly "newly discovered" statements are, in fact, the same statements featured in Plaintiff's Complaint filed in May 2018 (and were on the www.nowoodisgood.com website since at least April 2018); and

(3) Equitable relief (particularly the extraordinary equitable relief as sought herein) is precluded by Plaintiff's own unclean hands and violation of Fed. R. Evid. 408, as Plaintiff's motion is based on statements made in clearly designated settlement communications offered for the express purpose of proving liability.

A. **Plaintiff Has Not Demonstrated A Strong Likelihood of Success on the Merits.**

First, Plaintiff does not have a strong likelihood of success on the merits of its claims because the three representations forming the basis of its TRO Motion are not literally or impliedly false and misleading. Plaintiff admits as much in its own promotional materials and warranties. In addition, Plaintiff provides absolutely no support, and only conclusory statements, to show that any of the alleged statements actually deceives or tends to deceive a substantial portion of the intended audience, or are material to a consumer's purchasing decision – two required elements of a false advertising claim.

2

**Woodpecker Image:** As evidenced by its own Technical Bulletin No. 15 titled "Woodpeckers & Carpenter Ants," Plaintiff admits that its zinc borate treatment does not prevent damage from woodpeckers, carpenter ants, or carpenter bees. Plaintiff states:

- "<u>Zinc Borate is not effective in protecting composite wood products from woodpeckers and flickers</u>."

- "Other insects, such as carpenter ants or carpenter bees excavate holes & tunnels into wood, but do not consume the wood as a food source. <u>Therefore they are not exposed to the preservative at a high enough level to cause mortality</u>."

*See* Declaration of Marcus Kuizenga ("Kuizenga Decl.") at ¶ 4, Ex. A (emphasis added).

In addition, the woodpecker image used on the No Wood Website and printed materials depicts an actual photograph taken of actual woodpecker damage to engineered wood siding, depicted below. *Id.* Thus, the use of such image is not false nor misleading in any way.



On the surface, Plaintiff appears takes issue with the fanciful woodpecker image[2] appearing in the image on the No Wood Website and printed materials alleged in the motion, arguing that it somehow makes the claim that wood-based or engineered wood siding is subject to damage from woodpeckers false. However, Plaintiff's briefing makes clear that it actually contends that the <u>damage depicted</u> is false, arguing that "if the images and video of the woodpecker were truthful and accurate, there would be evidence of the woodpecker going through both the moisture barrier and either the structural framing, wood structural panels, or other structural assemblies." TRO Memo. at 11. This has nothing to do with the woodpecker image at all, but rather, the resulting damage allegedly failing to show these addition layers. As demonstrated by the photographs, which were taken by a James Hardie representative of actual damage to a home with engineered wood siding, the woodpecker damage is truthfully and accurately depicted, and Plaintiff cannot prove otherwise.

**"Pests Love It!":** As mentioned above, in Technical Bulletin No. 15 titled "Woodpeckers & Carpenter Ants," Plaintiff admits that its zinc borate treatment does not prevent damage from woodpeckers, carpenter ants, or carpenter bees – all of which are "pests." *See* Kuizenga Decl. at ¶ 5, Ex. B. Thus, the statement that "Pests Love It" and that wood-based or engineered wood siding products are "Subject to damage caused by woodpeckers, termites and other pests that can harm wood" is truthful and accurate. Tellingly, Plaintiff focuses only on the <u>structural termite</u> damage and ignores non-structural or cosmetic termite damage, or damage caused by non-termite pests. *See, e.g.*, TRO Memo. at 4, 12 ("To put the <u>termite</u> resistance of LP

---

[2] As noted below, Plaintiff has violated Fed. R. Evid. 408 by introducing communications related to the woodpecker image made during settlement discussions that should be excluded from consideration.

4

siding products to the ultimate test…"; "the LP SmartSide® siding showed no <u>structural</u> damage").

In fact, Plaintiff's Technical Bulletin demonstrates that its zinc borate treatment does not prevent cosmetic termite damage, <u>which is still damage</u>. *See* Kuizenga Decl. Ex. B. This is clear from the fundamental technology underlying Plaintiff's "proprietary zinc borate-based process":

> Zinc Borate is a systemic preservative and is effective against termites because they consume wood (cellulose) as food source. This cellulose is digested by symbiotic organisms inside the termite's digestive tract. These organisms are killed by the preservative and the termite starves.

*See* Technical Bulletin No. 15. In other words, for the process to work, the termite must eat the treated wood, which results in the termite starving to death. The process may <u>limit</u> further damage, and the amount of damage caused by the termite before it starves may not constitute <u>structural</u> damage, but termites eating away at Plaintiff's siding by ingestion of the wood is still damage. This is underscored by Plaintiff's exclusion of "termite damage which does not affect the structural integrity of the Product(s)." *See* Kuizenga Decl. ¶ 6, Ex. C. Simply because Plaintiff wants to draw a line between structural damage and non-structural damage does not change the fact that Defendant's statement – that it is subject to "damage" – is true.

**<u>Warped Wood Image</u>:** The image of the buckling siding is not false because it is a truthful representation of engineered wood product buckling, as described in the disclaimer on the No Wood Website. *See also* Kuizenga Decl. ¶ 7, Ex. D. Specifically, the product is a fiber-based wood siding product, which is a type of engineered wood product. *Id.* ¶ 8. Thus, the

5

disclaimer is not false or misleading.[3]  In addition, LP's U.S. installation instructions make clear that a 3/16th inch gap must be left where siding butts against another plank or at joints, to allow for expansion.  Kuizenga Decl. ¶ 9, Ex. E.  Put another way, when such a gap is not provided, the product can expand and buckle.  The buckling wood image expressly states that "improper installation may have been a contributing factor." *See* No Wood Website.  Thus, it is not false or misleading.

In addition, Plaintiff has failed to submit any evidence that any of the three allegedly false advertising statements has any tendency to deceive, or has deceived, any consumer.  In a similar regard, while Plaintiff suggests throughout its motion papers that the advertisements call out Plaintiff and/or Plaintiff's products, the advertisements do not mention Plaintiff or its products by name and Plaintiff provides no evidence that consumers are in fact drawing that conclusion.

**B.** **Plaintiff Delayed in Seeking Emergency Relief.**

The TRO Motion further must be denied because Plaintiff has delayed in seeking injunctive relief, undercutting any assertion that it is suffering irreparable harm of the nature to warrant expedited and extraordinary relief.  Plaintiff offers a strawman argument that it just discovered the allegedly false and misleading statements distributed during the Madison Parade of Homes, while simultaneously arguing that the statements sought for restraint are the same statements sought for injunction in its first motion.  Thus, though Plaintiff couches its TRO Motion as stemming from purportedly recent discoveries made during the Madison, Wisconsin parade of homes, each of the three statements Plaintiff seeks to restrain were present on the

---

[3] As noted below, Plaintiff has violated Fed. R. Evid. 408 by introducing communications related to the warped wood image made during settlement discussions that should be excluded from consideration.  Moreover, Defendant did not make the assertion Plaintiff claims it did.

6

website located at www.nowoodisgood.com (the "No Wood Website") since at least as early as April 9, 2018. *See* Kuizenga Decl.¶ 3.

Of note, Plaintiff does not identify the date it discovered the allegedly false advertising statements. Plaintiff, as the moving party, has the burden of proving that the circumstances "clearly demand" a preliminary injunction. *Beasley v. Westbrooks*, No. 3:16-3010, 2017 U.S. Dist. LEXIS 152103, at *4 (M.D. Tenn. Sep. 19, 2017). Temporary restraining orders are drastic remedies, and the burden is on Plaintiff to present evidence that it acted expeditiously to respond to the alleged "emergency" that "clearly demands" temporary relief. Plaintiff cannot meet this burden, given that the statements have been on the No Wood Website for over nine weeks before Plaintiff sought "emergency" injunctive relief. Moreover, based on the first page of Plaintiff's TRO Memo, Plaintiff learned about the advertisements' presence at the Parade of Homes on Saturday. *See* TRO Memo. at 1 (noting "activity only discover[ed] on Saturday"). Despite this alleged discovery, Plaintiff instead chose to file a Motion for Preliminary Injunction [Doc. 10] on Monday, June 11, then waited another two days before filing a substantively similar TRO Motion.

A delay of even a few months weighs against granting a temporary restraining order because it undercuts any assertion of harm, let alone the irreparable harm necessary to prevail. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771-72 (E.D. Mich. 2003) (Plaintiffs' [nine month] delay in seeking a preliminary injunction undermines their allegation of irreparable harm."). Here, the allegedly false and misleading statements have been known to Plaintiff since, at the latest, the date it filed its Complaint on May 13, 2018. The Court has already set a briefing schedule for Plaintiff's Motion for Preliminary Injunction, which arguably encompasses the claims now made in the TRO Motion. To the extent Plaintiff suffers any harm

7

in the three week period of the scheduling order, such harm is *de minimis* or non-existent – certainly not the irreparable harm necessary to warrant emergency relief. The TRO Motion should be denied.

C.   **Plaintiff's Request For Equitable Relief Is Barred By Unclean Hands and Request to Strike, Exclude, and Expunge Improper Materials.**

Finally, Plaintiff is not entitled to equitable relief in the nature of a temporary restraining order because it has come to the Court with unclean hands – specifically, Plaintiff has violated Federal Rule of Evidence 408 by filing with its motions a clearly designated settlement communication to support its claims. *See* Doc. 10-1 (incorporated into the TRO Motion). Injunctive relief "can be denied if a plaintiff comes to equity with unclean hands" *Big Time Worldwide Concert & Sport Club at Town Ctr. v. Marriott Int'l*, 236 F. Supp. 2d 791, 797 (E.D. Mich. 2003). The doctrine of unclean hands "provides, generally, that a party seeking equity cannot obtain relief when the party is guilty of unconscionable conduct directly related to the matter of litigation." *Id.* Not even including Plaintiff's own acts of false, misleading, deceptive, and tortious advertising statements regarding the alleged safety and health risks associated with Defendants' products, Plaintiff attempts to use protected communications under Rule 408 specifically to prove Defendant's liability for purposes of obtaining emergency equitable relief not only completely disregards the strictures of Rule 408 and constitutes unclean hands.

Rule 408 provides, in pertinent part:

(a)   **Prohibited Uses**. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
  (1)   furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
  (2)   conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

8

Fed. R. Evid. 408 (emphasis added). The crux of Rule 408 is its provision which excludes the introduction of all evidence of conduct or statements made in settlement negotiations when offered to prove to liability for or invalidity of a claim, or the merits of a claim. *Id.* Rule 408 even "exclude[es] factual admissions made in the course of settlement negotiations." *Eid v. Saint-Gobain Abrasives, Inc.*, 377 Fed. App'x 438, 445 (6th Cir. 2010). The critical public policy interests behind the protections of Rule 408 is to encourage the parties to speak freely in discussions with regard to compromise. "The rule recognizes that settlements are more likely to result when parties are free to speak openly during settlement negotiations, <u>without fear that what is said can be used against them at trial</u>." *Id.* (emphasis added).

In its TRO Motion and motion for preliminary injunction, Plaintiff has violated the fundamental purpose of Rule 408. Plaintiff cannot credibly argue that it submitted the communication for some other permissible purpose. Plaintiff states:

- "In response to the cease and desist letter sent by LP's counsel, Defendant admitted that the woodpecker image was superimposed but attempts to pass it off as 'puffery.'" TRO Memo. at 7.

- In response to the cease and desist letter, Defendant admitted that the image does not show "engineered wood," and claimed that it would correct the mistake but has not done so." TRO Memo. at 8.

- "Defendants in this case have admitted to imposing the woodpecker onto the image, even though they claim it to be puffery." TRO Memo. at 11.

- "Defendant even admitted as much in a response to LP's Cease and Desist Letter." TRO Memo. at 12.

9

The use of the letter and these statements must be stricken, expunged, and excluded as violative of Fed. R. Evid. 408, and the TRO motion denied on that basis alone.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court deny Plaintiff's TRO Motion in its entirety.

Respectfully submitted,

ADAMS AND REESE LLP

/s/ Maia T. Woodhouse
Tony Swafford, TN BPR No. 017578
Maia T. Woodhouse, TN BPR No. 030438
Fifth Third Center
424 Church Street, Suite 2700
Nashville, Tennessee 37219
Tel: (615) 259-1450
Fax: (615) 259-1470
Email: tony.swafford@arlaw.com
       maia.woodhouse@arlaw.com

*Counsel for James Hardie Building Products, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of June 2018, the foregoing was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail, postage prepaid and/or electronic mail. Parties may access this filing through the Court's electronic filing system.

>Samuel F. Miller
>Nicholas R. Valenti
>Miller Legal Partners PLLC
>Fifth Third Center – Suite 2000
>424 Church Street
>Nashville, Tennessee 37219
>Email: smiller@millerlegalpartners.com
>         nvalenti@millerlegalpartners.com

<br>

/s/ Maia T. Woodhouse
Maia T. Woodhouse