IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LOUISIANA-PACIFIC CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:18-cv-00447-JPM |
| v. ) | |
| ) | |
| JAMES HARDIE BUILDING ) | |
| PRODUCTS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND
ORDER CONTINUING SCHEDULING CONFERENCE**

The cause is before the Court on Plaintiff Louisiana-Pacific Corporation ("LP")'s Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 17.) LP filed its motion on June 13, 2018; later the same day, the Court set a telephonic motion hearing for the following morning (ECF No. 19) and Defendant James Hardie Building Products, Inc. ("JH") filed its response to the instant motion. (ECF No. 24.) The Court held a telephonic hearing on the motion on June 14, 2018 at 9:30 a.m. Present were Samuel Miller and Nicholas Valenti, counsel for LP, and Maia Woodhouse and Tony Swofford, counsel for JH. For the reasons discussed below, LP's motion is DENIED.

**I. Background**

**a. Factual History**

This action arises out of JH's statements made regarding engineered wood siding products in its marketing materials. (Compl, ECF No. 1, ¶ 4.) LP and JH both compete for

Page 1

market share in the manufactured siding industry. (Id., ¶ 3.) Plaintiff LP's products include "strand-based engineered wood siding" sold under the SmartSide® brand. (Id., ¶¶ 13, 16.) It claims to be the "undisputed leading manufacturer and distributor of stand-based engineered wood siding products in the United States." (Id., ¶ 22.) Defendant JH's products include cement-based siding products that are marketed as alternatives to engineered wood siding. (Id., ¶¶ 23-24, 26.)

JH markets its cement-based products as being superior to engineered wood products on its website www.nowoodisgood.com, in promotional materials, and in representations made by JH's agents to prospective customers. (Id., ¶¶ 28-63.) JH's marketing materials show engineered wood siding side-by-side with its own cement-based siding and assert that engineered wood sidings are inferior because "pests love" engineered wood sidings, and that engineered wood sidings are "natural fuel for fire," "susceptible to water absorption," and "won't weather well". (Id.) LP alleges that JH's statements regarding engineered wood siding are violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as being false or misleading representations. (Id., ¶¶ 68-83.) LP also asserts a claim for violations of Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* and Tennessee common law claims for tortuous interference and unfair competition. (Id., ¶¶ 84-102.)

### b. Procedural History

LP filed its complaint on May 13, 2018. (ECF No. 1.) On June 11, 2018, LP filed motions for a preliminary injunction (ECF No. 10) and for expedited discovery (ECF No. 13). The Court granted the motion for expedited discovery on June 12, 2018. (ECF No. 16.)

On June 13, 2018, LP filed the instant motion for a temporary restraining order and preliminary injunction. (ECF No. 17.) Later on June 13, 2018, the Court set a telephonic

hearing on the motion (ECF No. 19) and JH filed its response to the motion (ECF No. 24.) On June 14, 2018, the Court held a telephonic motion hearing regarding the motion with counsel from both parties.

LP seeks a temporary restraining order and preliminary injunction to prevent JH from using three marketing material items at the "Parade of Homes" home builders events in Madison, Wisconsin, that are taking place through June 24, 2018. (ECF No. 17 at PageIDs 180-81[1].) The items are: (1) an image of a woodpecker superimposed onto an image of engineered wood siding that contains a hole, (2) statements that "Pests Love It" in reference to engineered wood siding, and (3) an image of buckled siding under the caption "Soaks Up Trouble." (Id.)

**II.      Legal Standard**

Both of LP's requests—the temporary restraining order and the preliminary injunction—are subject to the same four-factor analysis. NE. Ohio Coal. for Homeless, 467 F.3d 999, 1009 (6th Cir. 2006). The factors the Court must consider are: "(1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the [order], (3) the probability that granting the [order] will cause substantial harm to others[,] and (4) whether the public interest will be advanced by issuing the [order]." Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.2d 377, 379 (6th Cir. 2006) (stating the four-factor test for a preliminary injunction).

**III.      Application**

LP argues that it is entitled to injunctive relief enjoining JH from employing each of three marketing items identified above at the Parade of Homes event. (ECF No. 17 at 181.) It

---

[1] Unless otherwise noted, page numbers reference the PageID index in CM/ECF.

asserts that each of the four factors weighs in favor of the injunction and submitted exhibits to establish that JH is using the items as part of its marketing campaign at the event. (ECF No. 18 at 224.) In opposition, JH argues that LP has not demonstrated a strong likelihood of success on the merits, that LP's delay in seeking injunctive relief undercuts LP's arguments regarding irreparable harm, and that LP's motion relies on statements that are inadmissible under Federal Rule of Evidence 408. (ECF No. 24 at 247). During the telephonic hearing held on June 14, 2018, the parties did not present additional evidence, but elaborated on the arguments made in the briefs. Their arguments are addressed in turn.

### a. Likelihood of Success on the Merits

The party seeking a temporary restraining order or preliminary injunction must establish a "strong likelihood of success on the merits[.]" NE. Ohio Coal. for Homeless, 467 F.3d at 1009. Each of LP's merits claims is addressed in turn.

#### i. Lanham Act

##### 1. Literally False or Deceptively Misleading Statements

LP argues that JH's marketing items are literally false or deceptively misleading. It argues that the woodpecker image is literally false because the image has been doctored to show a bird in the hole, that termites demonstrably do not "love" their siding, and that the image of buckled siding is not of engineered wood siding and also does not contain an effective disclaimer. (ECF No. 18 at 224-26.) It further argues that JH's other advertising contains deceptive or confusing statements. (Id.) JH responds that there is some truth to each of the marketing items, that some of the items contain puffery, and that LP cannot rely on as evidence JH's admissions regarding the woodpecker image and buckled siding, as those

statements are excluded under Federal Rule of Evidence 408.  (ECF No. 24 at PageID 247-51.)

The marketing items do not appear to be literally false as the term is defined in the law.  Although the marketing items may be "literally false" in the colloquial sense because they are not entirely true, "literal falsity" applies only to messages that are "'unambiguously' deceptive" to reasonable consumers of the goods in question.  Wysong Corp. v. APN, Inc., 889 F.3d 267, 271 (6th Cir. 2018).  LP has not argued that the marketing items are unambiguously deceptive to those consumers.  Accordingly, the Court finds that there is not a strong likelihood of success as to a determination of literal falsity.

Additionally, JH contends that each of the marketing items contains at least some element of truth, as supported by LP's own warranties and disclosures, as well as by JH's disclaimer on the buckled siding photo.  The parties' dispute regarding the level of truthfulness or misrepresentation contained in the marketing items reflects a dispute of a fact critical to LP's Lanham Act claim, which undermines the likelihood of LP's success on the merits of that claim.  At this juncture, LP has failed to establish a strong likelihood of success as to this element of its Lanham Act claim.

> 2. *Actual Deception or Tendency to Deceive a Substantial Portion of the Intended Audience*

LP asserts that it is entitled to the presumption of actual deception that follows a showing of literal falsity.  (ECF No. 18 at 228.)  It further argues that a reasonable consumer would be deceived by the marketing items.  (Id.)  JH argues that LP cannot show literal falsity and has provided no proof of consumer deception.  (ECF No. 24 at 251.)  During the telephonic motion conference held on June 14, 2018, LP confirmed that it does not, at this time, have proof of consumer deception.  Because literal falsity has not been shown and is at

least a matter of debate, LP is not entitled to rely solely on the presumption of actual deception at this juncture. Further, LP has no proof that JH's statements actually or tend to deceive a substantial portion of the intended audience; as confirmed during the telephonic motion hearing, this is only presented as an argument at this time. Accordingly, LP has not shown a strong likelihood of success as to this element of its Lanham Act claim.

### 3. *Materiality and Influence on Customer Decisions*

LP argues that this factor is satisfied because JH's marketing items misrepresent "inherent and essential qualities of LP's products." (ECF No. 18 at 229.) JH does not respond to this argument directly, but notes that the marketing items do not reference LP or its products directly, and there is no proof that consumers are associating the marketing items with LP. (ECF No. 24 at 251.) The Court finds that the nature of the statements made in the marketing items are such that, if believed, the marketing items involve material concerns of siding products consumers and would tend to influence a reasonable consumer's decisions. Accordingly, LP has shown a strong likelihood of success as to this element of its Lanham Act claim.

### 4. *Statements Made in Interstate Commerce*

The parties do not dispute that JH's statements made on the website are statements "in interstate commerce". For the purposes of this motion, the Court finds a strong likelihood of success as to this element of LP's Lanham Act claim.

### 5. *Causation of Harm to Plaintiff*

LP argues that causation is very likely because JH is comparing products between two competitors, and harm would logically follow that comparison. (ECF No. 18 at 230.) JH

responds that the marketing items do not reference LP or its products directly, and that there is no proof that consumers are associating the marketing items with LP. (ECF No. 24 at 251.)

Plaintiffs are not typically required to quantify their damages in order to obtain injunctive relief; logical likelihood of damages is considered to be sufficient. E.g., American Rockwool, Inc. v. Owens-Corning Fiberglas Corp., 640 F.Supp. 1411, 1443 (E.D. N.C. 1986). In the instant case, the marketing items at issue do not identify LP or any of its products, but instead are directed to engineered wood siding products as a group. The marketing items are very likely to impact the manufacturers of engineered wood siding. Although it is not clear how much of that group LP comprises, some impact on LP appears likely. For the purposes of this motion, LP has shown a strong likelihood of success as to this element of its Lanham Act claim.

Based on the lack of a strong likelihood of success as to the first two elements, LP has not shown a strong likelihood of succeeding on the merits of its Lanham Act claim.

        ii.   Tennessee Consumer Protection Act

LP espouses several alternative theories of relief under the TCPA, Tenn. Code. Ann. § 47-18-101 *et seq.*, all of which require some form of misrepresentation or untruthfulness. (ECF No. 18 at 231.) As discussed above under element (1) of the Lanham Act claim, there are significant disputes as to the truthfulness or misrepresentation contained in the marketing items. Additionally, for the same reasons discussed above with respect to causation under element (5) of the Lanham Act claim, LP has failed to provide any proof of causation under its TCPA claim. Accordingly, LP has not shown a strong likelihood of success on the merits under this claim.

Page 7
Case 3:18-cv-00447   Document 27   Filed 06/15/18   Page 7 of 11 PageID #: 286

### iii. Common Law Tortuous Interference

This cause of action requires several elements, one of which is "improper means" of interfering with LP's business relationships. (ECF No. 18 at 232 (collecting cases).) As discussed above under element (1) of the Lanham Act claim, there are significant disputes as to the truthfulness or misrepresentation contained in the marketing items. Accordingly, LP has not shown a strong likelihood of success on the merits under this claim.

### iv. Common Law Unfair Competition

Common-law unfair competition requires as a predicate that the defendant commit another recognized tort. (ECF No. 18 at 233 (collecting cases).) To the extent that this common-law claim has not been codified by the Tennessee Consumer Protection Act, LP's likelihood of success on the merits rises and falls with its likelihood of success on tortuous interference. For the same reasons discussed above, likelihood of success is not strong at this time.

LP has failed to show a strong likelihood of success on the merits of any of its claims. Accordingly, this factor weighs against granting the motion.

**b. Irreparable Harm**

LP argues that this factor is satisfied because reputational injuries constitute irreparable harm. (ECF No. 18 at 233-34.) JH responds that LP knew of the offending items for several weeks before requesting the instant injunctive relief, and that LP's decision to delay seeking that injunctive relief establishes a lack of irreparable harm. (ECF No. 24 at 251-53.)

The Court finds that this factor weighs in favor of granting the motion. LP is correct that reputational injury has been held to be a form of irreparable harm. (See ECF No. 18 at

233-34 (collecting cases).) LP's delay in seeking the injunctive relief can be attributed to its lack of knowledge that the marketing items in question would be used at the Parade of Homes event, and their motion seeks only to enjoin the items' use at the event. The factor weighs in favor of the injunctive relief to the extent to which LP would suffer irreparable harm if not for the injunctive relief. In the instant case, the reputational injury that LP alleges is far from certain, because the marketing items sought to be enjoined are directed at engineered wood siding products generally, rather than at LP or its products. During the telephonic motion hearing, LP argued that the marketing items target LP, both because LP is the leading provider of strand-based engineering wood and because LP's products are identifiable in the marketing items based on the shape and color of the siding products pictured. Those arguments are well taken. LP did not, however, argue that the shape or color of the siding is proprietary, unique, or otherwise attributable to it alone. Questions remain, therefore, about the degree to which the marketing items are associated with LP and the degree to which LP will suffer reputational injury absent the injunctive relief.

### c. Harm to Others

LP argues that this factor weighs in favor of granting the motion because any harms to JH are offset by the reputational injury to LP, and because LP seeks only to enjoin the use of the enumerated marketing items during the Parade of Homes event. (ECF No. 18 at 234-35.) LP did not address this issue in its response, and at the telephonic motion hearing did not provide the Court with an estimated cost of complying with the Court's order if the motion is granted.[2] Based on the exhibits LP submitted with its motion (ECF Nos. 17-2, 17-3, 17-4, 17-5), the marketing items sought to be enjoined make up only a small portion of JH's marketing

---

[2] The parties appear to agree that no harm would accrue to anyone other than JH as a result of the injunctive relief.

materials at the Parade of Homes event – they appear approximately ten times across all of the exhibits. Although JH's costs of complying with the injunctive relief are not known, there does not appear to be any way for JH to comply with the injunctive relief short of withdrawing the current campaign materials from the event and re-designing them to remove the three marketing items LP seeks to enjoin. This would impose a non-marginal cost on JH; even if the marketing materials can be redesigned at a small cost, there is no indication that the replacements could be provided during the Parade of Homes event. Accordingly, granting the motion appears to impose significant costs on JH.

### d. Public Interest

LP argues that the injunctive relief will serve the public interest by preventing false or misleading advertising and protecting consumer from unfair trade practices. (ECF No. 18 at 235.) JH did not direct any of its arguments to this factor. The Court finds that the injunctive relief would serve the public interest inasmuch as the injunctive relief would enjoin unfair trade practices.

### e. Weighing The Factors

Factor (1), the likelihood of success on the merits, favors denying the motion because LP has not established a strong likelihood of success on the merits at this juncture. Although other courts have found a failure to satisfy this factor to be dispositive, see Ohio Republican Party v. Brunner, 543 F.3d 357, 363 (6th Cir. 2008), the nuances of the instant case require that the other factors be weighed as well. Factor (2), irreparable harm, favors granting the motion based on reputational harm to LP. Factor (3), the harm to others, disfavors granting the motion because of the collateral harm to JH that is unrelated to the conduct LP asserts to

be unlawful. Factor (4), the public interest, also favors granting the motion inasmuch as the injunctive relief would enjoin unfair trade practices.

Considering the factors together, they weigh against granting the motion. As discussed above, LP's requested injunctive relief would require JH to withdraw the marketing campaign in use at the Parade of Homes event. As far as the record shows, the three parts of the campaign that are asserted to be unlawful make up only a small percentage of the total content that JH is displaying at the event. (See ECF Nos. 17-2, 17-3, 17-4, 17-5.) Because the harm to JH would necessarily include significant costs related to withdrawing content that LP does not allege to be unlawful, factor (3), the harm to others, must be given heavy weight. Comparing factors (1) and (3) to factors (2) and (4), the Court finds that factors (1) and (3) carry more weight in the instant case than factors (2) and (4). Accordingly, the four-factor inquiry weighs against granting the motion.

For the foregoing reasons, LP's motion is DENIED.

## IV. Continuing Telephonic Scheduling Conference

The Court previously set a Telephonic Scheduling Conference for July 13, 2018. During the June 14, 2018, motion hearing, the Court set a hearing on LP's motion for preliminary injunction to be held on August 1-2, 2018. For the purposes of efficiency, the Telephonic Scheduling Conference is hereby CONTINUED until the preliminary injunction hearing.

**SO ORDERED**, this 15th day of June, 2018.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE