IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LOUISIANA-PACIFIC CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES HARDIE BUILDING PRODUCTS, ) <br> INC., ) <br> ) <br> Defendant/Counter-Plaintiff/ ) <br> Third-Party Plaintiff. ) <br> ) <br> v. ) <br> ) <br> THE KRUSE BROTHERS, INC., ) <br> ) <br> Third-Party Defendant. ) | CIVIL ACTION NO. 3:18-cv-00447 <br><br> JUDGE MCCALLA <br><br> MAGISTRATE JUDGE HOLMES <br><br> JURY DEMAND |

**JOINT DISCOVERY DISPUTE STATEMENT
PURSUANT TO LOCAL RULE 37.01(a)**

On December 28, 2018 and January 3, 2019, counsel for Louisiana-Pacific Corporation ("LP") and James Hardie Building Products, Inc. ("Jame Hardie"), conducted meet-and-confer discovery conferences to address LP's responses and objections to James Hardie Second Set of Requests for Documents and Second Set of Interrogatories. Pursuant to Local Rule 37.01(b), this is LP and James Hardie's Joint Written Statement as to the issues that remain unresolved and ready for resolution by the court.

# JAMES HARDIE'S POSITIONS

## Matters for the Court to Resolve As Presented by James Hardie

1. LP claims that James Hardie's advertisement "Subject to damage caused by woodpeckers, termites and other pests that can harm wood" is literally false or misleading because "among other reasons, LP's SmartSide® siding is treated with a zinc borate-based process that resists damages from termites and other pests." Whether LP must provide responsive documents to documents requests seeking documents regarding damage to LP SmartSide caused by other pests, such as ants, carpenter bees, wasps, and other similar wood boring insects.

2. LP claims James Hardie's advertisement "OSB siding painted by 3rd party pre-finishers can show loss of paint after extended exposure to sunlight.***" is literally false or misleading because "pre-finishers are third-parties over which LP has no control…"Whether LP must produce responsive documents regarding the "rigorous quality control and audit program" LP advertises when promoting prefinished LP SmartSide products.

3. Whether LP must produce documents regarding its paint adherence testing for the last five years.

4. Whether LP has complied with its obligations to produce responsive documents and information responsive to James Hardie Second Request for Documents and Second Set of Interrogatories.

## I. Discovery relating to "Other Pests."

LP has claimed that the certain advertisements on James Hardie's No Wood Is Good (NWIG) webpage are literally false or misleading. Specifically, LP claims that the Pests Love It Section is literally false or misleading. The "Pests Love It" section states: "Subject to damage caused by woodpeckers, termites and **other pests** that can harm wood." (emphasis added). In its First Amended Complaint, LP alleges that the "Pests Love It" is literally false or misleading because "… LP's SmartSide® siding is treated with a zinc borate-based process that resists damages from termites and **other pests**." FAC at ¶ 45 (emphasis added). Similarly, LP claims that the reference to woodpeckers in the Pests Love It section is literally false or misleading "because … LP's SmartSide® siding is treated with a zinc borate-based process that resists

2

damages from termites and **other pests** that would attract woodpeckers." FAC at ¶ 47 (emphasis added).

James Hardie sought discovery regarding damage caused to SmartSide® siding by "other pests" based on LP's claim that its product resists damaged caused by "other pests." *See* Request for Production 1, 3, 13, 25, 26, 27, 28, 55, 56, 68, 69, and 70. Similarly, in Interrogatory No2, James Hardie asked LP to identify "each warranty claim that has been submitted to LP that relates to pest damage…" LP, however, has resisted producing any discovery relating to claims of damage caused by "other pests" and has limited its productions and responses to specific pest claims for woodpeckers and termites. LP claims that discovery regarding "other pests" is not relevant to the claims or defenses in the First Amended Complaint.

LP's argument, however, ignores that LP has directly alleged that the Pests Love It section is literally false because as LP alleges its product resists damage to "other pests." *See* FAC ¶ ¶ 45 and 47. Consequently, discovery related to claims associated with pest damage caused by "other pests" is relevant to the claims that LP has asserted and the defenses to those claims. Thus, LP's objection to limit pest discovery to only woodpeckers and termites should be overruled and LP should be compelled to produce other pest discovery responsive to RFPs 1, 3, 13, 25, 26, 27, 28, 55, 56, 68, 69, and 70 for the time period of the last ten years, i.e. 2008 to the current date. Similarly, Plaintiff should also be compelled provide a response to Interrogatory No. 2 by identifying all warranty claims related to pest damage for the last ten years.

Related to other pest discovery, LP has refused to incorporate search terms regarding other pests when conducting a review of responsive document. James Hardie proposed the following additional search terms: wasp!, moth!, and pest!. LP refuses to use these search terms on the same mistaken belief that other pest discovery is not relevant to the claims and defenses in

3

this matter. James Hardie has also proposed a new custodian, Vance Thomas, and LP has refused to respond to whether he will be added.  Vance Thomas is necessary because he administer the warranty claims that are filed with LP. Thus, he possesses discoverable information about those claims filed under the limited warranty that LP issues. For the reasons already noted, LP is wrong and other pest discovery is directly related to specific allegations have made in its First Amended Complaint. Thus, the Court should compel LP to use the requested search terms and add Vance Thomas as a custodian when examining responsive documents to James Hardie's discovery requests.  By failing to timely produce this information, James Hardie requests extension of the discovery deadline for James Hardie only for one month so it can have the relevant documents before it takes depositions of LP.

**II.     Discovery Related to LP's Preferred Prefinishers.**

LP claims that NWIG advertisement which states "OSB siding painted by 3rd party pre-finishers can show loss of paint after extended exposure to sunlight.***" is literally false or misleading because "**pre-finishers are third-parties over which LP has no control** such that the durability of pre-finishing is not tied to any characteristic or purported lack of quality of LP's SmartSide® siding." First Amended Complaint at ¶ 56. Yet, LP advertises on its website that its prefinished (pre-painted) siding is prefinished by "LP Preferred Prefinishers." *See* https://lpcorp.com/products/exterior/siding-trim/inspiration/prefinished-colors.  LP further claims that "**Our** [Lp] Preferred Prefinishers **participate in a rigorous quality control and audit program** to maintain high standards".  *Id.* (emphasis added).

Consequently, James Hardie issued discovery relating to LP's Preferred Prefinisher and the "**rigorous quality control and audit program**" that "[LP's] Preferred Prefinishers" participate in response to the allegations in Paragraph 56. Plaintiff's objections that these claims

4

are inconsequential to the claims and defenses misses the mark as LP's own website claim that there is an audit program and quality control program that all of LP's Preferred Prefinishers must participate in. Further, LP advertises that the preferred prefinishers are LP's preferred prefinishers, not independent third parties. The requested discovery, thus, is relevant to the claims and defenses and LP should be ordered to respond to RFP 22 and Interrogatories No. 6. The fact discovery deadline of February 15, 2019 should be extended for James Hardie so it can have these documents before it takes the depositions of LP.

**IV.     Discovery of LP's Paint Testing**

LP claims that James Hardie's claims regarding paint adherence are false or misleading. James Hardie has requested paint testing that LP has performed and in LP's possession. LP has agreed to provide responsive documents but subject to the ESI protocol. These requests, however, seek documents only and not electronic communications or other documents subject to the ESI protocol. LP should be compelled to provide responsive documents for all tests within LP's possession for the last five years in response to RFP Nos. 7 and 8. The fact discovery deadline of February 15, 2019 should be extended for James Hardie so it can have these documents before it takes the depositions of LP.

**V.     LP Should be Compelled to Provide Responsive Documents**

LP provided its initial responses to second set of document requests and interrogatories on November 26, 2018. LP, however, at that time did not produce responsive documents referenced in the document requests and the documents identified in Plaintiff's interrogatories. Plaintiff made its first production on January 6, 2019. That production included SEC filings that James Hardie has made and warranty claim files.[1] It appears from LP's position that LP, without

---

[1] James Hardie, upon seeing LP's position, confirmed that the warranty claim files were produced on January 6, 2019.

5

Case 3:18-cv-00447   Document 354-1   Filed 01/11/19   Page 5 of 10 PageID #: 15785

ever informing James Hardie, has not started the process to collect any responsive documents – electronic or otherwise, using the ESI protocol as its shield. Respectfully, the ESI protocol does not supplant LP's discovery obligations to produce responsive information within custody, control or possession. With depositions of LP witnesses set to begin on January 24, 2019 and with the fact discovery deadline of February 15, 2019, James Hardie requests either additional time for its discovery deadline only for the taking of LP witnesses so that it can have responsive documents prior to these depositions or that these deposition be left open so James Hardie can examine each of LP's witnesses on the late-produced documents.

## LP'S POSITION

### Matters for the Court to Resolve As Presented by James Hardie

It is unfortunate that the parties are not able to agree on the simply matter of neutrally identifying the issues for the Court. The general issues before the Court in this joint statement are the following:

1. Whether LP must provide responsive documents to documents requests seeking documents regarding damage to SmartSide® siding alleged caused by ants, carpenter bees, wasps, and moths.

2. Whether LP must produce responsive documents regarding its recommendations for third-party prefinishers (i.e. painters) SmartSide® siding.

3. Whether LP's paint adherence testing is relevant to any claim or defense in the lawsuit and must be produced.

4. Whether James Hardie has identified specific non-objectionable responsive documents that LP has not produced in response to James Hardie Second Request for Documents and Second Set of Interrogatories.

LP objects to James Hardie's "Matters for the Court to Resolve" for two reasons. First, LR 37.01 requires the inclusion of a statement…"setting forth exactly what discovery is in dispute (either by including the text of the discovery requests and responses or by attachment as

exhibits." This section does not include this requirement despite LP's request. Second, LP objects to this section because Hardie does not set forth the issues before the Court in a neutral matter and instead attempts to include introductory argument to each issue. LP requested such statements be removed to simply display the actual issues. James Hardie's refuses to do so. Accordingly, LP does not join in the statement of issues set forth by Hardie.

In several of the above sections, Hardie requests extensions to complete various aspects of discovery. The requested extension was never made in a letter and was never discussed even once during a meet-and-confer. The first time the issue of any extension was raised was when Hardie submitted the first draft of the joint statement. Hardie's requests for discovery extensions are, therefore, premature. Further, Hardie has failed to include The Kruse Brothers, Inc.'s attorney on the request for extension. Being that any extensions impacts them, Hardie should be required to raise the extension issue with them as well.

I. **Discovery Relating to "Other Pests."**

LP claims that the "Pests Love It Section" of the NWIG campaign website is literally false because it specifically references woodpeckers and termites as follows:

> 47. The reference to "woodpeckers" in the "PESTS LOVE IT" section is literally false and/or deceptively misleading because, among other reasons, LP's SmartSide® siding is treated with a zinc borate-based process that resists damages from termites and other pests that would attract woodpeckers.
>
> 48. The reference to "termites" in the "PESTS LOVE IT" section is literally false and/or deceptively misleading because, among other reasons LP's SmartSide® siding is treated with a zinc borate-based process that resists damages from termites and/or the reference falsely implies structural damage may occur to LP's SmartSide® siding.

Amended Complaint, ¶ 47, 48. The citations by Hardie above to paragraphs 45 and 47 of the Amended Complaint do not expand the scope of what LP's asserts is false and/or deceptive. This

7

case is about woodpeckers and termites. Hardie's advertising contains references and pictures and videos of woodpeckers. Hardie's advertising contains a reference to and graphic image of a termite. Hardie does not reference wasps, bees, moths, or any other pests. Hardie is simply trying to run us the cost of discovery through irrelevant discovery. LP further notes that it has searched but not identified a single warranty claim relating to damage allegedly caused to SmartSide® siding by any pest.

LP also opposes Hardie's request to extend discovery. Hardie originally proposed (on June 27, 2018) only the keywords "Termite!" and "Woodpecker!" and did not propose "Pest!", "Moth!", or "Wasp!" until December 28, 2018, less than two weeks ago. Hardie's insinuation that it suggested these terms months ago is false. If moths and wasps are such a problem, Hardie offers no explanation for why they waited several moths to suggest such terms for a first time.

LP has already testified that there are no warranty claims related to woodpeckers or termites. LP has already produced warranty files related to alleged buckling. Other than a manual review of all warranty claims, LP has not means to specifically search for "pests" either generally or specifically.

**II.    Discovery Relating to LP's Preferred Prefinishers.**

In the Amended Complaint, LP alleges the "WON'T WEATHER WELL" section of the NWIG campaign is literally false and/or deceptively misleading because pre-finishers are third-parties over which LP has no control such that the durability of pre-finishing is not tied to any characteristic or purported lack of quality of LP's SmartSide® siding and Hardie's disclaimer in that section is too small and removed where it states, "OSB siding painted by 3rd party pre-finishers can show loss of paint after extended exposure to sunlight.***" Am. Comp. at ¶¶55-58. This begs the questions as to why is Hardie asking for this information and why is it relevant?

Hardie wants information regarding a program just because it wants it. It does not state why such information is relevant to a claim or defense. The claim is limited to a misrepresentation about the inherent characteristics of SmartSide. Treatment by prefinishers, whether preferred or not, is irrelevant to SmartSide® siding's inherent characteristics.

**III. Discovery of LP's Paint Testing.**

Again, LP alleges that Hardie falsely and/or deceptively claims that an inherent characteristic of LP's SmartSide siding is that it will not weather well. This has nothing to do with the quality of paint offered by third parties, regardless of whether LP has tested that paint or not.

**IV. LP Should Not Be Compelled to Produce Responsive Documents.**

James Hardie is simply attempting to create an issue to offset the pending Motion to Compel filed against it. As shown in that motion and the soon to be filed second motion to compel, Hardie has all but unilaterally abandoned the stipulated ESI protocol and refuses to search for electronically stored information. Believing incorrectly that the best defense is to go on the offense and claim the other is engaged in wrongdoing, James Hardie is requesting a generalize order to compel in its last "issue."

LP has searched for and has produced or is producing documents responsive to Hardie's discovery requests that were located through means other than through keyword searches. Any assertion to the contrary has been repeatedly denied and has been countered at length. There is absolutely no basis for James Hardie's statement, "It appears from LP's position that LP, without ever informing James Hardie, has not started the process to collect any responsive documents – electronic or otherwise, using the ESI protocol as its shield. Respectfully, the ESI protocol does not supplant LP's discovery obligations to produce responsive information within custody, control or possession." For example, LP has searched for without keywords and produced

9

thousands of pages of warranty files[2] and is in the process of producing sales revenue data in report format. Further, LP is in the process of supplementing its discovery responses with information and documents that were created after the preliminary injunction phase of this lawsuit with the keywords that the parties have agreed upon. Both parties are producing documents on a rolling basis. Apart from the pest-related keywords above (which Hardie requested for the first time during the meet and confer on December 28, 2018, and which LP's counsel immediately rejected), Hardie does not identify any additional keywords to be searched, and pursuant to the ESI Protocol, LP need not perform a keyword search until keywords are agreed upon. ESI Protocol at 5 ("Neither Party shall be required to run the search terms until the Parties have reached agreement, unless it chooses to do so at its own risk.") (Dkt. 53). Hardie has not otherwise indicated what it is looking for in this section, and LP does not know how to respond.

---

[2] Hardie incorrectly asserts that the warranty claims were produced after January 6, 2019. They were not. They were produced on January 6, 2019 with the Hardie SEC documents.