# EXHIBIT 3

*Business Valuation Applications to Economic Damages for Lost Profits*, Utah B.J., Jan./Feb. 2011

**24-FEB Utah B.J. 25**

**Utah Bar Journal**
January/February, 2011

**Article**
Matt Connors[a1] Robert P.K. Mooney[a2]

Copyright © 2011 by the Utah State Bar; Matt Connors, Robert P.K. Mooney

# BUSINESS VALUATION APPLICATIONS TO ECONOMIC DAMAGES FOR LOST PROFITS

This article is meant to convey the similarity of education, knowledge, skills, and training used in valuing a business with those needed for estimating lost profits a business may sustain. This skill set is held by a niche group of professionals, typically accountants, who have training and experience in matters related to business valuation and expert witness services. Qualified experts need to have a solid understanding of business valuation, accounting, finance, and other principles that are generally accepted in the expert community and need to use reliable principles and methods to ensure the highest level of client service and to have their work accepted by courts.

## The Relationship Between Estimating Lost Profits and Business Valuation

A business valuation performed by a Certified Public Accountant is subject to the requirements of the Statement on Standards for Valuation Services promulgated by the American Institute of Certified Public Accountants ("AICPA").

A business valuation typically focuses on three approaches to arrive at a conclusion of value: (1) the asset approach, (2) the market approach, and (3) the income approach. Using these approaches, a business valuation is typically meant to arrive at a value for a business as a whole or a fractional ownership thereof. A detailed review of the various approaches and methods within each approach are outside the scope of this article. However, principles of the income approach form the basis of much of a lost profits calculation. The income approach is succinctly summarized as follows:

> the value of an asset is the present value of its expected returns. Specifically, you expect an asset to provide a stream of returns during the period of time that you own it. To convert this estimated stream of returns to a value for the security you must discount this stream at your required rate of return. This process of valuation requires estimates of (1) the stream of expected returns, and (2) the required rate of return on the investment.

Frank K. Reilly, INVESTMENT ANALYSIS AND PORTFOLIO MANAGEMENT 434 (5th ed. 1997).

"Value today always equals future cash flow discounted at the opportunity cost of capital." Richard A. Brealey & Stewart C. Myers, PRINCIPLES OF CORPORATE FINANCE 73 (5th ed. 1996).

This approach is "the very heart of valuation." Shannon P. Pratt, VALUING A BUSINESS 152 (4th ed. 2000). Similarly, estimating lost profits requires the expert to estimate similar components: (1) the stream of lost profits and (2) an appropriate rate of return at which the lost stream of profits should be discounted to arrive at a present value.

Estimating lost profits is frequently done by estimating the present value of an earnings impairment as a result of some business interruption. Earnings impairment typically refers to decreased cash flow and can be temporary or permanent. A business can suffer an earnings impairment that reduces its earnings only partially or, in certain situations, the business can suffer a complete earnings impairment. Scenarios exist where the closer the earnings impairment comes to being a complete earnings impairment, the closer the lost profits engagement comes to estimating the value of an entire business. Thus the relationship between estimating lost profits and business valuation. The remainder of this article is devoted to the typical components involved in estimating lost profits, generally ***26** performed in the context of litigation.

### Using a Business Valuation Background in Litigation Matters

In order to give expert testimony in a litigation matter regarding business valuation or lost profits, qualified witnesses must show that their "testimony is the product of reliable principles and methods." FED. R. EVID. 702.

The AICPA has stated that business valuation may be performed for a variety of purposes including litigation, owner disputes, contractual disputes, bankruptcy, marital dissolution, employment disputes, intellectual property disputes, and dissenting shareholder or minority owner oppression cases. While the AICPA standard on valuation services does not apply to engagements that are limited to determining economic damages, such as lost profits, litigation engagements performed by a Certified Public Accountant that include an estimation of value are subject to the AICPA standard. However, even for lost profit analyses, courts recognize that testimony based on AICPA standards, if those standards are properly applied, are "the product of reliable principles and methods." *See Leon v. Kelly*, Case No. 07-0467 JB/WDS, 2009 WL 1300936, at **13, 20 (D.N.M. Jan. 12, 2009) (admitting lost profit opinion testimony that utilized the guidance in the AICPA practice aid on calculating lost profits).

### Performing Qualitative and Quantitative Analysis

Qualitative and quantitative factors are considered in both a business valuation and a lost profits estimation. In a litigious matter, there are various qualitative factors that are unique to estimating lost profits. In estimating lost profits, the financial expert should "consider," "understand," and "be prepared to explain" the causal fact resulting in plaintiff damages. Roman L. Weil, Peter B. Frank, & Christian W. Hughes, LITIGATION SERVICES HANDBOOK: THE ROLE OF THE FINANCIAL EXPERT 2.1-2.2 (4th ed. 2007). There is a distinction, however, in the legal requirement of causation and proof of the amount of damages. The plaintiff must show that damages were proximately caused by the defendant. The plaintiff expert must calculate a reasonable estimate of damages without undue speculation. Arriving at a reasonable estimate means that the expert should consider and take into account other factors that could be partially responsible for a plaintiff's lost profits. For example, a reasonable estimate considers capacity and market share constraints and factors these considerations into the estimated loss. Failure to adequately account for other factors contributing to lost profits not only hurts an expert's credibility, it can impair the reliability of an expert's testimony so as to render it inadmissible. *See, e.g., MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2005) ("While an expert need not consider every possible factor to render a 'reliable' opinion, the expert still must consider enough factors to make his or her opinion sufficiently reliable in the eyes of the court.").

In *Drug Mart Pharmacy Corp. v. American. Home Products Corp.*, 472 F. Supp. 2d 385 (E.D.N.Y. 2007), the court granted summary judgment against the plaintiff on a lost profit claim for failure to provide evidence of the lost profits after disregarding the report of the plaintiff's expert. *See id.* at 430-32. The court disregarded the expert's report because it failed to meaningfully factor out other causes for the plaintiff's losses. *See id.*

In estimating lost profits, the damages expert must not only consider other factors leading to the plaintiff's damages, the expert must also define the correct damages period. The damages period depends on the nature of the matter, but typically begins with a breach or business interruption and ends at the termination of a contract or when operations return to "normal." Conceivably, operations that are permanently affected may never return to "normal."

### Defining the Appropriate Lost Cash Flows



Case 3:18-cv-00447 Document 591-3 Filed 06/14/19 Page 3 of 5 PageID #: 27360

Once the relevant qualitative factors have been considered, the expert should address quantitative factors. Experienced financial experts know the similarities and differences in defining the appropriate cash flow for a business valuation as opposed to a lost profits analysis. In a lost profits analysis the calculation typically begins with estimating lost revenues. Several methods are available to estimate lost revenues. The “before and after” method estimates lost revenues as the difference between a “but-for” scenario of unimpaired revenue and the actual revenues that were generated. The “yardstick” method estimates lost revenues based on some benchmark such as the performance of a plaintiff at a different location, the plaintiff’s actual experience versus past budget results, or industry averages. The appropriate measure of lost revenues can also be based on the terms of a contract. Other methods exist and can be used to estimate lost revenues based on the facts and circumstances of the matter.

After estimating lost revenues, it is necessary to estimate costs that the plaintiff would incur to generate the lost revenues. These costs are typically referred to as avoided costs. Avoided costs in estimating lost profits are commonly categorized by accountants as one of two general categories, fixed or variable. Variable costs typically vary with production, while fixed costs generally remain constant over a range of production and time. Based on the circumstances of the matter, the relevant avoided costs should be identified and subtracted from lost revenues. This process frequently involves the expert gaining an understanding of the cost environment in which the plaintiff ***27** operates based on historical operating costs.

The practitioner should also be mindful of the principle of mitigation. A plaintiff generally has the duty to mitigate losses. *See Watkins v. Ford*, 2010 UT App 243, ¶ 20, 239 P.3d 526. Whether the financial expert has been hired by the plaintiff or the defendant, mitigation should not be ignored as failure to mitigate can be raised as a defense. An expert should attempt to ascertain “whether actual sales during the period of the breach represented additional sales that would have occurred anyway or were replacement sales for the breached amount.” Roman L. Weil, Peter B. Frank, & Christian W. Hughes, LITIGATION SERVICES HANDBOOK: THE ROLE OF THE FINANCIAL EXPERT 3.9 (4th ed. 2007). Mitigation should be addressed so the expert can attempt to measure what, if any, steps were or should have been taken by the plaintiff to mitigate its loss.

## Valuing Historical and Future Losses at Present Value

Typically, lost profits estimations have historical and future loss components. The financial expert is responsible to express past and future losses in terms of their present value. Using one method, the expert discounts cash flows to the date of loss, then calculates prejudgment interest to a future date, commonly the date of the award. Another method discounts only future lost profits to the date of trial, but may also apply prejudgment interest to historical losses. Whether historical lost profits should be discounted to the date of loss and carried forward to the date of trial at a rate of prejudgment interest and at what prejudgment rate is acceptable normally needs to be determined with the assistance of counsel based on the applicable statutory and case law.

Clearly, in order to perform any discounting, the appropriate discount rate needs to be established. In valuing a business, discount rates are typically based on a company’s weighted average cost of capital (“WACC”) or the cost of equity. The WACC and the cost of equity are differentiated as follows: the cost of equity is the required rate of return by an equity investor and the WACC is the blended required return of all debt and equity investors. This cost of capital, whether in the form of debt or equity, is the “expected rate of return the market requires in order to attract funds to a particular investment.” Shannon Pratt, COST OF CAPITAL: ESTIMATION AND APPLICATION 3 (2d ed. 2002). Economically speaking, the cost of capital can be related to the principle of substitution, that is, “an investor will not invest in a particular asset if there is a more attractive substitute.” *Id.* While courts have allowed discounting at a risk free rate, using a discount rate based on a company’s cost of capital is meant to account for the risk inherent in an investment. Various approaches are available for the expert to determine the cost of capital and are beyond the scope of this article.

The discount rate is highly important as it can have a large impact on the value of damages. For example, using a discount rate of 4.5%, a five year cash flow stream of $1 million each year growing at 3% per year has a present value of $4.65 million. Using the same cash flow, but a discount rate of 20%, the present value is more than 30% less, at $3.14 million. Because the discount rate can have such a significant impact on a final damages calculation, the expert must take care that the chosen discount rate is not deemed by the court to be arbitrary. The expert must be prepared to justify the designated discount rate by reference to generally accepted methodologies. Failure for an expert to do so can give rise to fertile admissibility challenges.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

While performing a business valuation and estimating lost profits have different requirements, in terms of considerations made by the expert, many of the principles, skills, and knowledge used in business valuation are similar to those used in estimating lost profits. As an advocate, attorneys are advised to become familiar with professionals who are trained in business valuation practices, the rigorous exercise of estimating lost profits, and are accustomed to working in the legal environment so that as advocates, attorneys can provide the highest level of client service.

Footnotes

[a1] *MATT CONNORS is a Senior Manager at the Salt Lake City based consulting firm Rocky Mountain Advisory and practices in the areas of litigation support and business valuation. He is a Certified Public Accountant and Accredited in Business Valuation by the American Institute of Certified Public Accountants.*

[a2] *ROBERT P.K. MOONEY is the sole member of the Law Office of Robert P.K. Mooney, PLLC in Salt Lake City. He focuses his practice on commercial litigation involving business and real estate disputes.*

24-FEB UTBJ 25

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.