# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 28, 2019

Mr. Joshua Counts Cumby
Mr. Rocklan W. King III
Mr. Thomas Anthony Swafford
Ms. Maia T. Woodhouse
Adams & Reese, 424 Church Street, Suite 2800
Nashville, TN 37219

Mr. Samuel Flint Miller
Mr. Nicholas R. Valenti
Miller Legal Partners
424 Church Street, Suite 2000
Nashville, TN 37219

Ms. Tara L. Swafford
Swafford Law Firm
207 Third Avenue, N.
Franklin, TN 37064

Re: Case No. 18-5913, *Louisiana-Pacific Corp. v. James Hardie Building Products, et al*
Originating Case No. : 3:18-cv-00447

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Kirk L. Davies

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LOUISIANA-PACIFIC CORPORATION,

*Plaintiff-Appellant*,

*v.*

JAMES HARDIE BUILDING PRODUCTS, INC.,

*Defendant-Appellee*.

No. 18-5913

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:18-cv-00447—Jon Phipps McCalla, District Judge.

Decided and Filed: June 28, 2019

Before: COOK, McKEAGUE, and WHITE, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Samuel F. Miller, Nicholas R. Valenti, A. Grace Van Dyke James, MILLER LEGAL PARTNERS PLLC, Nashville, Tennessee, for Appellant. Thomas Anthony Swafford, Rocklan W. King, III, Maia T. Woodhouse, ADAMS AND REESE LLP, Nashville, Tennessee, Tara L. Swafford, THE SWAFFORD LAW FIRM, Franklin, Tennessee, for Appellee.

_____

### OPINION

_____

COOK, Circuit Judge. Can termites, woodpeckers, and other pests damage engineered-wood building siding? According to the district court, maybe. And that "maybe" isn't enough to justify granting Louisiana-Pacific a preliminary injunction to stop its competitor from advertising Louisiana-Pacific's siding as vulnerable to pest damage. Louisiana-Pacific needed to show that

it would likely succeed in proving the advertisement unambiguously false under the Lanham Act and the Tennessee Consumer Protection Act.  It did not, so we affirm the district court's denial of Louisiana-Pacific's motion.

## I.

Louisiana-Pacific Corporation and James Hardie Building Products, Incorporated compete for market share in the building siding industry.   Louisiana-Pacific produces "engineered-wood" siding—wood treated with zinc borate, a preservative that poisons termites; Hardie sells fiber-cement siding.  To demonstrate the superiority of its fiber cement, Hardie initiated an advertising campaign called "No Wood Is Good," proclaiming that customers ought to realize that all wood siding—however "engineered"—is vulnerable to damage by pests.  Its marketing materials included (1) digitally-altered images and video of a woodpecker perched in a hole in Louisiana-Pacific's siding; and (2) nearby text boasting both that "Pests Love It," and that engineered wood is "[s]ubject to damage caused by woodpeckers, termites and other pests."



The campaign prompted Louisiana-Pacific to sue Hardie, alleging that these ads (and one other) violated federal and state prohibitions on false advertising, and move for a preliminary

injunction.   The court heard three days of testimony before partially granting and partially denying Louisiana-Pacific's motion.   Louisiana-Pacific appealed the adverse rulings.

## II.

As relevant here, the court determined that Louisiana-Pacific failed to show a strong likelihood of success on the merits of its false advertisement claims and denied the company an injunction.  R. 171, PageID 6519–20.  We temper our deference to the district court's denying a preliminary injunction by reviewing any legal conclusions made in the process de novo, findings of fact for clear error, and its ultimate decision for abuse of discretion.  *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017).

Courts reserve the extraordinary remedy of a preliminary injunction for those cases where it is necessary to preserve the status quo pending a final determination of the merits.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  In deciding whether to issue an injunction, a district court weighs four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quotation omitted).  As long as a plaintiff demonstrates *some* likelihood of success on the merits, a court should balance rather than tally these factors.  *Id.*  But our cases warn that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success.  *Id.*; *see also Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010).

## III.

Like the district court, we begin our analysis by assessing Louisiana-Pacific's likelihood of success.  *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). To prove false advertising under the Lanham Act, a plaintiff must first establish that the defendant made "a false or misleading representation of fact" about a product.  15 U.S.C. § 1125(a)(1)(B).  Similarly, to prevail on a statutory disparagement claim under the Tennessee Consumer Protection Act—a state law analog to a false advertising Lanham Act claim—a

plaintiff must prove that the defendant made "false or misleading representations of fact." Tenn. Code. Ann. § 47-18-104(b)(8). Under the Lanham Act, if a statement is "literally false," we presume that it actually deceived consumers. *Wysong Corp. v. APN*, *Inc.*, 889 F.3d 267, 270–71 (6th Cir. 2018). If a statement is merely "misleading," then Louisiana-Pacific must prove that it deceived a "significant portion" of reasonable consumers. *Id.* at 271. Beginning with this element, Louisiana-Pacific maintains that both Hardie's woodpecker images and statements that "Pests Love It" are either literally false, or true but misleading.

## A. Woodpecker Imagery

While inspecting a Hardie installation one day, a Hardie Technical Sales Representative noticed that a neighboring home fitted with Louisiana-Pacific siding sported a fist-sized hole. He took a few photographs of the damage and sent them to Hardie's head of marketing, who forwarded them to the company's advertising agency. The agency incorporated one photograph into Hardie's "No Wood Is Good" campaign—sharpening the image's colors, darkening the interior of the hole to make it appear deeper, and superimposing a woodpecker. Louisiana-Pacific contends that these digital alterations make the photograph literally false.

We disagree. The Lanham Act doesn't require advertisers to lie in wait, cameras in hand, for an actual woodpecker to drum away at a house's siding. Reasonable consumers know that marketing involves some level of exaggeration, and some amount of digital retouching to tell a story. *See Wysong*, 889 F.3d at 270–71. Here, neither party contests that the photograph depicts a real hole in Louisiana-Pacific's siding.[1] And no reasonable consumer would expect that Hardie caught a woodpecker *in flagrante delicto*.

Further, the advertisement fairly represents engineered wood's susceptibility to woodpecker damage, implying that these birds can drum holes in engineered-wood siding. Louisiana-Pacific's corporate representative testified that the company had never tested its siding's woodpecker resilience, had no data to support any assertion "that our product is resistant to some level against woodpecker damage," and "can't say [woodpecker damage] won't happen

---

[1]Although Louisiana-Pacific challenges the expert's qualifications to opine on the source of the hole, he testified to thirty-five years of experience removing wildlife from homes and businesses, including thousands of cases involving woodpeckers. The court therefore did not abuse its discretion by crediting the expert's account.

. . . . [I]t's possible."  In contrast, Hardie proffered expert evidence that the picture conveyed an accurate message—namely, that a woodpecker probably created the photographed hole, and that woodpeckers often damage wood-based siding.  Thus, though its digital enhancements might, colloquially speaking, render the image "false," they are not the sort of literal falsity the Lanham Act targets.  *See Wysong*, 889 F.3d at 270–71.

Because Louisiana-Pacific proffered no evidence that the photographs misrepresent woodpecker behavior, *see Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735–36 (6th Cir. 2012), it failed to satisfy its burden of proving literal falsity.

The district court also correctly concluded that Louisiana-Pacific did not present sufficient proof that the woodpecker images and video misled consumers.  "[O]ne of the key elements of a cause of action for misleading advertising under the Lanham Act" when a plaintiff requests injunctive relief "is that there is . . . a tendency to deceive a substantial portion of the intended audience."  *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d 606, 616, 618 (6th Cir. 1999).  The aggrieved must present "evidence of some sort demonstrating that consumers were misled," *id.* at 618, "show[ing] how consumers actually do react" rather than "arguing how consumers *could* react."  *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990) (emphasis added).

Louisiana-Pacific adduced no such proof, instead relying on (1) testimony that Hardie intended the advertisements to affect consumer-purchasing decisions, (2) documentation that the campaign's advertisements reached a large audience, and (3) a Hardie study demonstrating that consumers rely on manufacturers' websites for product information, and that an ad featuring a woodpecker nesting in a hole would be more likely to persuade consumers than just a photo of a hole.  None of this evidence supplies the necessary insight into the reasonable consumer's perspective, showing that Hardie's ads tricked buyers into believing an untruth (here, that woodpeckers peck holes in Louisiana-Pacific siding when they actually do not).  Louisiana-Pacific therefore failed to carry its burden that the woodpecker imagery was misleading.

No. 18-5913          *Louisiana-Pacific Corp. v. James Hardie Building Prods.*          Page 6

## B. "Pests Love It"

Next, Louisiana-Pacific charges the headline on the graphic comparing Hardie siding to engineered-wood siding with literal falsity.  Just above the photo of the woodpecker, Hardie's advertisement notes that "Pests Love [engineered wood]," and, in smaller print, that such siding is "[s]ubject to damage caused by woodpeckers, termites and other pests that can harm wood." The advertisement then compares Louisiana-Pacific's siding with Hardie's "Way Too Tough" fiber cement, which "holds no appeal for woodpeckers, termites and other pests."   The district court found that the headline "Pests Love It," rather than literal falsity, amounts to puffery— unverifiable exaggeration to prove a point.  We agree.

Puffery protects statements that reasonable consumers would not interpret as reliably factual.  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).  No reasonable purchaser would believe that Hardie knows—or could discover—whether pests "love" engineered-wood siding.  *See Wysong*, 889 F.3d at 271–72 (finding that reasonable consumers would not "believe most of the (cheap) dog food they encounter in the pet-food aisle is in fact made of the same sumptuous (and more costly) ingredients they find a few aisles over in the people-food sections").  Further, no buyer would reasonably assume that the phrase "Pests Love It" conveys a quantifiable, objective fact about pest preference.  *See, e.g.*, *Coastal Abstract Serv.*, 173 F.3d at 731 (explaining that puffery is "not a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact"); *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) ("'America's Favorite Pasta' is not a specific, measurable claim and cannot be reasonably interpreted as an objective fact.  'Well liked' and 'admired' are entirely subjective and vague.  Neither . . . provide an empirical benchmark by which the claim can be measured.").

That said, the context of a message can transform unactionable puffery into an empirically verifiable, factual claim.  *Am. Italian Pasta Co.*, 371 F.3d at 391.  Louisiana-Pacific maintains that testing has proven Hardie's second sentence—"[s]ubject to damage caused by woodpeckers, termites and other pests that can harm wood"—to be false.  From the record, Louisiana-Pacific highlights that tests rated both engineered-wood and fiber-cement siding as

completely resistant to termite damage.  Thus, Louisiana-Pacific argues, pests do *not* love its engineered-wood siding.

Hardie disagrees with Louisiana-Pacific's interpretation of the test results.  Further, Hardie notes that Louisiana-Pacific's engineered-wood siding resists damage because it's treated with zinc borate.  But termites must still ingest small amounts of (or "graze" on) the treated wood before the zinc borate poisons the termites.  Thus, Hardie contends, the wood-based siding is certainly "subject" or "susceptible" to damage; its statement truthfully (or at least ambiguously) identifies a potential vulnerability of engineered wood.

In response, Louisiana-Pacific explains that grazing causes no structural or obvious aesthetic damage.  But Louisiana-Pacific's own experts admitted that grazing results in some damage.  And Louisiana-Pacific's warranty on its engineered-wood siding explicitly excludes non-structural termite damage.

Our review thus requires that we ask whether reasonable consumers would interpret Hardie's use of the word "damage" to unambiguously mean structural damage.  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180–81 (8th Cir. 1998).  Louisiana-Pacific has not shown us that they would.  As the party seeking the injunction under a theory of literal falsehood, that was its burden.  The Second Circuit, in contrast, decided that a pregnancy kit's advertisement was literally false because the ad's use of an unambiguous, industry-specific term in a non-standard way would certainly confuse a reasonable consumer.  *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 66 (2d Cir. 2016).

Here, Louisiana-Pacific's argument distinguishing *structural* and obvious *aesthetic* damage from *all* damage doesn't diminish that word's ambiguity in Hardie's advertising.  *See Innovation Ventures*, 694 F.3d at 737; *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) ("[O]nly an unambiguous message can be literally false.").  Thus, though testable, Louisiana-Pacific has not carried its burden to prove the claim literally false here.

Louisiana-Pacific likewise did not prove that Hardie's claims that "Pests Love It" were misleading.  As with the woodpecker imagery, Louisiana-Pacific relied on evidence that many

consumers saw the ads and Hardie's market studies showing that the ads were influential. But again, those facts tend to show only that the advertising affected consumers' purchasing decisions, not that consumers were duped. Louisiana-Pacific therefore failed to carry its burden.

## IV.

Because Louisiana-Pacific, for now, has failed to prove literal falsity or that Hardie's advertisements otherwise misled consumers, we need not address the remaining Lanham Act elements. Only by satisfying all of them can a movant succeed on a false advertising claim.

Given Louisiana-Pacific's failure to demonstrate a likelihood of success on its Lanham Act or Tennessee Consumer Protection Act claims at this stage of the litigation, we also need not second guess the district court's evaluation of the remaining three preliminary injunction factors. When a district court determines that the movant has not presented any evidence that he will succeed on the merits of his claim, it must not issue a preliminary injunction. Thus, the court's refusal to enter an injunction here could not amount to an abuse of its discretion. We AFFIRM.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 18-5913

LOUISIANA-PACIFIC CORPORATION,

     Plaintiff - Appellant,

     v.

JAMES HARDIE BUILDING PRODUCTS, INC.,

     Defendant - Appellee.

```
┌──────────────────────────────────┐
│              FILED               │
│           Jun 28, 2019           │
│      DEBORAH S. HUNT, Clerk      │
└──────────────────────────────────┘
```

Before:  COOK, McKEAGUE, and WHITE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Louisiana-Pacific Corporation's motion for a preliminary injunction is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____

Deborah S. Hunt, Clerk